BUTZNER, Senior Circuit Judge,
dissenting:
I respectfully dissent from the proposition that the Eleventh Amendment bars state employees from suing in federal court to enforce the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201-219.
I
Section 1 of the Fourteenth Amendment provides in part: “No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States.” Section 5 of the Fourteenth Amendment-provides: “The Congress shall have power to enforce, by appropriate legislation, the provisions of this article.”
Congress cannot define the meaning of “privileges,” for this would involve interpreting the Constitution. City of Boerne v. Flores, — U.S. -, 117 S.Ct. 2157, 2168, 138 L.Ed.2d 624 (1997). This responsibility is the province of the judiciary. Marbury v. Madison, 5 U.S. (1 Cranch) 137, 176, 2 L.Ed. 60 (1803). Nevertheless, the- Fourteenth *192 Amendment confers important enforcement powers on Congress. The Supreme Court has described Congress’ function as follows:
Legislation which deters or remedies constitutional violations can fall within the sweep of Congress’ enforcement power even if in the process it prohibits conduct which is not itself unconstitutional and intrudes into “legislative spheres of autonomy previously reserved to the States.”
Boerne, 117 S.Ct. at 2163 (citation omitted).
The first inquiry is to ascertain whether Virginia has made or enforced any law pertaining to its employees’ wages. The employees allege that Virginia “under-credits hours worked” and denies them proper compensation. Subject to budgetary constraints enacted by the General Assembly, the power to fix wages is conferred on the Governor who acts after receiving recommendations from the Department of Personnel and Training. Va.Code Ann. § 2.1-114.5 ¶ 2 (Mi-ehie 1995 & Supp.1997). There can be no doubt that Virginia has made and enforced a law that governs its employees’ wages.
Whether Virginia law pertaining to wages abridges the privileges of citizens of the United States depends on whether the protections of the Fair Labor Standards Act are among such privileges. This requires a judicial inquiry into the constitutional meaning of the term “Privileges.”
The opinion in the Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873), which is the font of law concerning the Privileges and Immunities Clause, cautions against a broad reading of the Clause. The Court in the Slaughter-House Cases, however, was not concerned with legislation enacted by Congress. Instead, the Court held that the Privileges and Immunities Clause itself [without benefit of congressional legislation] did not prohibit a state legislature from granting a monopoly. It was in this context that the Court cautioned against a broad reading of the Clause.
Distinguished constitutional scholars, beginning with Philip B. Kurland, have recognized the “existent and potential needs that the privileges or immunities clause may be able to meet” if it is not cabined by the caution voiced in the Slaughter-House Cases. Philip B. Kurland, The Privileges and Immunities Clause: Its Hour Come Round at Last?, 1972 Wash. U. L.Q. 405, 418; see also John H. Ely, Democracy and Distrust 22-30 (1980); Laurence H. Tribe, American Constitutional Law 558-59 (2d ed.1988); Gerald Gunther & Kathleen M. Sullivan, Constitutional Law 429-31 (13th Ed.1997).
To satisfy judicially imposed constitutional requirements, the Court’s opinion in the Slaughter-House Cases explains that a privilege or immunity must owe its “existence to the Federal government, its National character, its Constitution, or its laws.” 83 U.S. (16 Wall.) at 79 (emphasis added). Analysis of the Fair Labor Standards Act in accordance with these instructions establishes the following:
The Fair Labor Standards Act owes its existence to the Federal government.
It is National in character. Subject to the Act’s statutory exemptions, every wage earner in the United States is brought within its coverage.
It was constitutionally enacted pursuant to power conferred on Congress by the Commerce Clause, Article 1 Section 8. See Garcia v. San Antonio Metro. Transit Auth., 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985). Congress found that “labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers” burdened interstate commerce.' 29 U.S.C. § 202 (1994).
It is a duly enacted law of the United States, which provides for minimum wages and maximum hours, among other things.
The Fair Labor Standards Act discloses Congress’ unequivocal and express intent to abrogate the immunity conferred by the Eleventh Amendment. An employer is defined to include a “public agency,” 29 U.S.C. § 203(d); “a public agency” is defined to include a state, § 203(x); an individual employed by a public agency means “any individual employed by a State,” § 203(e)(2)(C); a state means “any State of the United States,” § 203(c). An action for violation of *193 the Act may be brought against “any employer (including a public agency) in any Federal or State court of competent jurisdiction.” § 216(b).
Not only must Congress clearly state its intent to abrogate a state’s Eleventh Amendment immunity, but it must act “pursuant to a valid exercise of power.” Seminole Tribe of Florida v. Florida, 517 U.S. 44, 55, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (citation omitted). This ultimately depends on whether the protections of the Fair Labor Standards Act are among the privileges of national citizenship protected by the Fourteenth Amendment. Not every law passed by Congress creates such a privilege. The Court has held that the privileges of state citizenship are those that are “fundamental” and those that may be “comprehended under the following general heads: protection by the government, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety, subject, nevertheless, to such restraints as the government may prescribe for the general good of the whole.” SlaughterHouse Cases, 83 U.S. (16 Wall.) at 76. The privileges of United States citizenship are of no less significance.
To determine whether Congress has validly exercised its power to enforce the Privileges and Immunities Clause through Section 5 of the Fourteenth Amendment, one needs to examine what the Supreme Court and other courts have said about the fundamental nature and importance of the Fair Labor Standards Act.
The Supreme Court has affirmed the Act’s fundamental importance to the nation. In one of its fullest and earliest expositions, the Court noted that the FLSA is intended
to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. The statute was a recognition of the fact that due to the unequal bargaining power as between employer and employee, certain segments of the population required federal compulsory legislation to prevent private contracts on their part which endangered national health and efficiency and as a result the free movement of goods in interstate commerce. To accomplish this purpose standards of minimum wages and maximum hours were provided.
Brooklyn Sav. Bank v. O’Neil, 324 U.S. 697, 706-7, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (footnotes omitted).
The Court recognized that
The Fair Labor Standards Act was designed “to extend the frontiers of social progress” by “insuring to all our able bodied working men and women a fair day’s pay for a fair day’s work.” Any exemption from such humanitarian and remedial legislation must therefore be narrowly construed, giving due regard to the plain meaning of statutory language and the intent of Congress. To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the. interpretative process and to frustrate the announced will of the people.
A.H. Phillips, Inc. v. Walling, 324 U.S. 490, 493, 65 S.Ct. 807, 89 L.Ed. 1095 (1945) (citation omitted).
The Fair Labor Standards Act “seeure[s] for the lowest paid segment of the Nation’s workers a subsistence wage” and assures the maintenance of a minimum living standard. D.A. Schulte, Inc. v. Gangi, 328 U.S. 108, 116, 66 S.Ct. 925, 90 L.Ed. 1114 (1946); see also Wirtz v. Ti Ti Peat Humus Co., 373 F.2d 209, 212 (4th Cir.1967).
“[T]he FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive a fair day’s pay for a fair day’s work and would be protected from the evil of overwork as well as underpay.” Barrentine v. Arkansas-Best Freight Sys., Inc., 450 U.S. 728, 739, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981) (internal quotation marks and citation omitted).
“The Fair Labor Standards Act is a major enactment by Congress of social and economic policy, intended to protect certain groups of the population from substandard wages and excessive hours____” Foremost Dairies, Inc. v. Wirtz, 381 F.2d 653, 655 (5th Cir.1967).
*194 “The purpose of the Act ... was not to regulate interstate commerce as such, but to eliminate, as rapidly as practicable, substandard labor conditions throughout the nation.” Mitchell v. Empire Gas Eng’g Co., 256 F.2d 781, 783 (5th Cir.1958).
The Act restores bargaining power to workers to prevent their exploitation. See Isaacson v. Penn Community Servs., Inc., 450 F.2d 1306, 1310 (4th Cir.1971); McComb v. Homeworkers’ Handicraft Coop., 176 F.2d 633, 636 (4th Cir.1949).
The Act is “comprehensive in its purpose and remedial in character.” Missel v. Overnight Motor Transp. Co., 126 F.2d 98, 103 (4th Cir.), aff'd, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682 (1942).
These excerpts from judicial opinions establish that the protections of the Fair Labor Standards Act are among the privileges secured by the Privileges and Immunities Clause.
II
Dissenting, I conclude that the Fair Labor Standards Act is remedial legislation that protects privileges of national citizenship guaranteed by Section 1 of the Fourteenth Amendment. A state may not enact any law that abridges these privileges. Congress has expressed an intent in the Act to abrogate States’ Eleventh Amendment immunity. The Fair Labor Standards Act is appropriate legislation enacted by Congress, pursuant to Section 5 of the Fourteenth Amendment, to enforce the Privileges and Immunities Clause.